50 CCPA

**Application of Kermit V. WEINSTOCK and Emert S. Pfau.**

**Patent Appeal No. 6899.**

United States Court of Customs and Patent Appeals.

June 6, 1963.

T. A. TeGrotenhuis and Vincent A. Greene, Cleveland, Ohio (McCoy, Greene & TeGrotenhuis, Cleveland, Ohio, Clyde V. Erwin, Jr., Beale & Jones, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D.C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

This appeal is from the affirmance by the Board of Appeals of the examiner's rejection of claims 43, 46, 53 and 55 of appellants' application, Serial No. 489,-262, filed February 18, 1955, entitled "Cement For Synthetic and Oil-Extended Rubber". The rejection, based on 35 U.S.C. § 103, is for obviousness of the claimed invention in view of the following prior art references:

| | | |
|---|---|---|
| Pike et al. | 2,576,968 | Dec. 4, 1951 |
| Owen | 2,742,942 | Apr. 24, 1956 |
| Schwartz | 2,749,960 | June 12, 1956 |
| Australian Patent | 152,872 | Aug. 18, 1953 |

As the title of the application indicates, appellants' invention resides in what is said to be a new vulcanizable, pressure sensitive, rubber cement. The appealed claims define a vulcanized pneumatic tire in which the constituent rubber portions have been joined by appellants' new cement. The ingredients of the cement are disclosed as:

[A] A synthetic rubber which has a Mooney viscosity of about 90 to 200, and is a copolymer of a conjugated diolefinic compound and a monoolefinic compound,

[B] a hydrocarbon oil as a softening agent or plasticizer,

[C] a resinous tackifying material, and

[D] carbon black as a filler or reinforcing agent.

Appellants have emphasized throughout their extensive brief that their invention relates to an "all-synthetic rubber tire" which they assert has been a matter of vital interest to the tire industry and the U. S. Government "for at least 20 years because of the danger that the supply of natural rubber would be cut off." However, the appealed claims are not restricted to synthetic rubber

tires, but cover any "vulcanized pneumatic tire" which, before vulcanization, has "uncured rubber portions". The appealed claims thus cover any tire, synthetic or natural, which contains a cement having the constituents listed above.

Appealed claims 43, 46 and 55 are dependent on appealed claim 53. Analysis of this claim, in order to acquire a better understanding of the present issue, is facilitated by rearrangement of the order of some of its statements and presenting the thus rearranged claim in outline form with editorial additions as indicated by the emphasized portions.

*Claim 53*

A vulcanized pneumatic tire, said tire when unvulcanized having uncured rubber portions joined by

A thin layer of a vulcanizable pressure—sensitive rubber cement compound of high film strength interposed between said rubber portions

Said cement compound comprising

[A] [*Synthetic Rubber*]

100 parts by weight of a rubbery synthetic hydrocarbon polymerization product of

■ A conjugated diolefinic compound of not in excess of eight carbon atoms,

■ having a raw computed Mooney viscosity of M, M being about 90 to 200,

■ said polymerization product being the copolymer of said conjugated diolefinic compound and a copolymerizable monoolefinic compound,

[a] the atoms forming said polymerization product being obtained principally from said conjugated diolefinic compound,

[B] [*Softening Agent or Plasticizer*]

About 5 to 40 parts of a compatible hydrocarbon oil,

■ said oil being liquid at normal temperatures,

■ and having a volatility such that when placed in an open

cup for a few hours in an atmosphere maintained at a temperature of 300° F. the volatile loss will be not substantially greater than about 25 percent.

■ the total amount of plasticizers in said cement compound not exceeding about 50 parts.

[C] [*Resinous Tackifier*]

About 30 to 60 parts of a compatible resinous material that is soluble in pure benzene,

■ the amount by weight of resinous material being at least twice the amount of softener,

■ said resinous material consisting essentially of a compatible resinous tackifying material selected from the group consisting of

[a] coumarone-indene resins,

[b] condensation products of acetylene and at least one phenol which consists

1. only of carbon, oxygen and hydrogen atoms and which is open in the ortho and para positions,

[c] condensation products of an aliphatic aldehyde having

1. no more than two carbon atoms and at least one phenol which

a. consists only of carbon, oxygen and hydrogen atoms and which is open in more than one of the ortho and para positions,

[d] rosins, indene resins, coumarone resins and mixtures thereof,

[e] the total amount of resins in said cement compound not exceeding about $(M/4 + 20)$ parts,

[D] [*Filler or Reinforcing Agent*]

and about 40 to 90 parts of reinforcing carbon black.

Claim 43 calls for the inclusion of natural rubber in the cement claimed in

claim 53. Claim 46 calls for the resinous tackifying material of claim 53 to be a condensation product of acetylene and a specified type of phenol. Claim 55 requires that the synthetic rubber of claim 53 have a Mooney viscosity of about 90 to 120 and specifies the oil and resinous material content to be "about 10 parts" and "about 30 to 40 parts" per 100 parts of synthetic rubber, respectively.

The Pike et al. reference patent relates to a pressure-sensitive adhesive. As stated in the specification:

"This invention relates to normally tacky pressure-sensitive adhesives and to their method of production. While not limited thereto, it has particular reference to adhesives based on rubbers which are copolymers of butadiene with various organic monomers.

"The improved adhesives are superior to ordinary rubber adhesives in stability during long storage and under moderate heat conditions and produce a permanently non-softening bond once applied. The improved adhesives are relatively free of cold flow, a defect which is present in many pressure-sensitive adhesives made from synthetic or natural polymers. * * *

* * * * * *

"This invention is applicable to adhesives made from various related elastomers, especially to polymerized dienes, such as polybutadiene-1, 3, polyisoprene, polymethylisoprene, polymethylpentadiene or the copolymers of butadienes with vinyl compounds, as, for instance, vinylbenzene or acrylonitrile. To explain the invention more clearly, however, reference will be made herein to certain specific copolymers—hereafter described as butadiene-styrene rubber —and commonly known in this country under the name GR–S, a nomenclature selected as standard by the government. * * *"

Pike's disclosed adhesive comprises [A] a synthetic rubber, [B] a plasticizer in the form of an oil, [C] a tackifier, and [D] a filler. The rubber used by Pike et al. in their adhesive is a butadiene-styrene copolymer having a Mooney viscosity up to 100 with 30 to 70 being stated as the preferred range. Various resins may be used as the tackifying agent. The filler may be any one of several compounds, including "carbon blacks, (e. g., semi-reinforcing black)." In addition to giving six preferred formulas for his cement, Pike specifies ranges of parts by weight of the oil, tackifier and filler per hundred parts by weight of the synthetic rubber.

A curing agent is also employed by Pike but in an amount "much less than is normally used with such rubber materials and curing is carried out substantially to completion, i. e. until no more curing agent is available for further reaction."

The Owen patent discloses a vulcanized pneumatic tire made by interposing an uncured synthetic rubber adhesive or cement between uncured rubber portions, one or both of which may be a synthetic rubber, and vulcanizing the assembly.

The Schwartz patent discloses the manufacture of an automobile tire by joining uncured natural or synthetic rubber to a synthetic rubber by a solution of polychloroprene, and then curing or vulcanizing the assembly.

The Australian patent shows that natural rubber and a condensation product of acetylene and a phenol, which product is designated "Koresin", have been used to obtain "tackiness" in a synthetic rubber, such as a butadiene copolymer, in the manufacture of automobile tires. While no particular adhesive is disclosed, it is deemed significant that the patentee states:

"The high Mooney polymers of the present invention when combined with small amounts of oil are also suitable for the production of adhesives and the like. * * *"

The sole question to be decided is whether the board was correct in concluding that the pneumatic tire defined by

the appealed claims would be obvious to a person of ordinary skill in the art of tire manufacturing from the combined teachings of the cited references. 35 U.S.C. § 103.

 Owen and Schwartz each cement together the parts of a rubber tire using a cement containing two rubbery polymers in the case of Owen and one in the case of Schwartz. Except for the specific cement claimed by appellants, the combination of elements in the pneumatic tire as claimed by appellants in claim 53 is found in both Owen and Schwartz.

The board concluded:

"We are of the opinion that claim 53 is not patentable over the Pike et al. reference considered with Owen or Schwartz. We do not regard that the showings in the affidavits of record are sufficient to establish that the ranges of proportions set out in this claim are critical. We note that a number of tests were run in an effort to show criticality of appellants' proportions, none of which included the use of proportions shown in Example A (on the second page) of Pike et al. In Example I shown on the first page of the affidavit filed June 30, 1958 (paper No. 18) the proportions of the components are within the proportions set out in claim 53 yet the test splice made therefrom failed. It is stated that the use of the semi-reinforcing carbon black therein did not provide the reinforcement and stiffness needed for a GR–S tread cement. Claim 53 does not require that the adhesive be employed as a tread cement and appellants disclose, beginning on page 31, line 23, that, if the cement is employed as a ply cement, other types of carbon, including semi-reinforcing carbon black, may be employed in the composition.

"In our opinion, the step of curing the composition in Pike et al. does not serve to patentably distinguish claim 53 therefrom. The claim only requires that the cement be vulcanizable, it appears to us that the adhesive of Pike et al. is susceptible to further vulcanization since it is stated in that patent the amount of curing agent employed is much less than is normally used with such polymers."

Appellants argue that a person skilled in the tire building art would never consider trying the adhesive cement of Pike in a tire carcass and that since the reference patents relate to non-analogous arts, their teachings cannot properly be combined to reject the appealed claims. We note, however, in this connection that Pike et al. disclose pressure-sensitive adhesives containing [A] SBR rubber,[1] [B] a plasticizer, [C] a resinous tackifying material and [D] a filler or reinforcing agent which may be carbon black.

Appellants argue that the narrow proportions of ingredients as defined in the appealed claims are clearly outside the broad ranges disclosed in the Pike patent and that since Pike indicates a preference for SBR copolymers having a relatively low (30 to 70) Mooney viscosity, the synthetic rubber cement of the appealed claims, having a high Mooney viscosity, is not suggested by Pike's adhesive cement.

The board's conclusion as to this argument was:

"The Pike et al. reference discloses a pressure sensitive adhesive which includes a butadiene styrene resin having a Mooney viscosity of up to 100, a tackifier resin, a plasticizer, which may be a hydrocarbon oil, and a filler, which may be a semi-reinforcing carbon black. *It is not disputed that the range of proportions disclosed by this patent is inclusive of the proportions employed by appellants.* \* \* \*" [Emphasis added.]

1. As stated in appellant's brief:
"The term 'SBR' and the older term 'GR–S' are used to identify a butadiene-styrene copolymer formed from a major portion (i. e., 70 to 90%) of butadiene."

In appellants Requests for Reconsideration made after the initial board decision, it is correctly pointed out that the ranges disclosed by Pike et al. for resin content are not in fact inclusive of the proportions of resin in the appealed claims.[2] Thus, the board was not correct in stating that the broad range of proportions disclosed by Pike et al. "is inclusive of the proportions employed by appellants".

We are not convinced, however, that there is a critical difference between the cement composition of Pike and of appellants, one (Pike) having a maximum of 50 parts of resin and the other (appellants) having a maximum of 45 [3] parts of resin per 100 parts of SBR. We note that claim 53 limits the resin content as "not exceeding *about* (M/4 + 20) parts" [Emphasis added] while claim 55 states the resin proportions to be "about 30 to 40 parts". [Emphasis added]

Furthermore, it is noted, as stated in appellants' brief, that:

"It is well known in the art that the tensile strength is seriously reduced as the amounts of oil and tackifier are increased. * * *"

Thus, it seems to us a person skilled in this art would know that the lower end of the broad range of resin content (50–150) disclosed by Pike would be the preferable range to select for a cement requiring high tensile strength.

The inconsistencies in claim 53 are such that we cannot attribute critical significance to the claimed ranges which appellants have urged upon us as patentably distinguishing their asserted invention over the prior art. Claim 53 requires that the amount of the resin be "at least twice the amount of the softener". Considering the hydrocarbon oil to be the softener, either the range of 5 to 40 parts of softener or the range of 30–60 parts of resin does not appear to be accurately stated. The claim further requires that "the total amount of resins in said cement compound" shall not exceed "(M/4 + 20) parts, * * *." Since the Mooney viscosity of the SBR is said to be "about 90 to 200", this limitation indicates that the resin content may range from 42½ to 70 parts. This range is not the same range as the claimed "30 to 60 parts of a compatible resinous material".

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.

---

2. Pike states that his cement may contain "between 50 and 150 parts of tackifier" per 100 parts of SBR. Claim 53 states that "the total amount of resins in said cement compound not exceeding about (M/4 + 20) parts", M being the Mooney viscosity of the SBR. Thus, Pike et al., in using a SBR with a Mooney viscosity of 100 (which is the maximum Mooney value disclosed by Pike and within the minimum value satisfying appellants' claim ranges), exceeds the limits of claim 53 which would allow only (100/4 + 20) = 45 parts of resins per 100 units of SBR.

3. Claim 55 calls for a maximum of 40 parts of resin.